UNITED STATES of America,
Appellant,

v.

SOUTHERN PACIFIC COMPANY,
Appellee.

No. 16953.

United States Court of Appeals
Ninth Circuit.

Dec. 29, 1960.

Laughlin E. Waters, U. S. Atty., Carla A. Hills, Asst. U. S. Atty., Los Angeles, Cal., Henry L. Hilzinger, Attorney, Interstate Commerce Commission, Sydney Brodie, William A. Kehoe, Jr., Attorneys, Department of Justice, Washington, D. C., for appellant.

E. D. Yeomans and John H. Gordon, Los Angeles, Cal., for appellee.

Before BARNES, HAMLIN and JERTBERG, Circuit Judges.

JERTBERG, Circuit Judge.

Appellant filed against appellee a civil suit under Title 28 U.S.C.A. § 1345, framed in three causes of action, to recover statutory penalties for three alleged violations of Safety Appliance Acts (Title 45 U.S.C.A. §§ 1–16). The district court rendered judgment on each of the first two causes of action in favor of appellant, and found in favor of appellee on the third cause of action. While appellant appeals from such judgment, appellee paid and satisfied the penalty imposed under the first and second causes of action. The result is that only the violation alleged in the third cause of action is involved in this appeal, of which this court has jurisdiction under Title 28 U.S.C.A. §§ 1291 and 1294(1).

The facts are not in dispute. On January 22, 1960, appellee used in interstate commerce its train No. 919, consisting of 112 cars, from San Luis Obispo, California, to San Francisco, California. 111 of these cars had operative power brakes which could be operated by the engineer of the locomotive, but the 63rd car, #SP MW 2392, had a cutoff cock closed which

rendered the power brakes on such car inoperative, although power was passing through its air lines to the 49 cars behind it. While the train was at San Luis Obispo an inspector for the Interstate Commerce Commission discovered the above noted defect on car No. 2392, and, following the train departure from San Luis Obispo, informed an employee of appellee at San Luis Obispo of such defect, who arranged to have such car removed from the train at Watsonville, California, where the defect was repaired.

The court held that appellee had not complied with Interstate Commerce Commission Order of June 6, 1910 (49 C.F.R. Sec. 132.1), which raised from 50 to 85 the percentage stated in the two requirements set forth in the Act of March 2, 1903, as amended April 11, 1958, by Public Law 85–375 (45 U.S.C.A. § 9), to wit: (1) where any train is operated with power brakes, not less than 85% of its cars shall have their brakes "used and operated by the engineer"; and (2) all power braked cars which are "associated together" with this 85% must have their brakes "used and operated by the engineer". The Court below pointed out that to comply with the Commission's Order defendant's car No. SPMW 2392, the 63rd of 112 cars, would have had to be in 95th to 112th position, rather than in 63rd position.

However, the district court concluded that the Interstate Commerce Commission Order of June 6, 1910, was invalid. The court based its conclusion on the ground that "there is more safety in placing a car with brakes that cannot be operated by the engineer in the middle of the train [and] therefore the Interstate Commerce Commission's Order of June 6, 1910 * * * is not 'promulgated solely for the purpose of achieving safety' in accordance with the proviso of Public Law 85–375."

The court further ruled that since the Commission's order was invalid appellee need not comply with its provisions but need only comply, and in fact had complied, with the provisions of the statute, since 50% of the cars of appellee's train were equipped with brakes that could be "used and operated by the engineer" and 50% of appellee's cars which had power brakes operated by the engineer were "associated together." The district court made no finding that the defect on car 2392 could have been repaired at San Luis Obispo.

The ruling of the district court in favor of appellee on the third count of the complaint must be considered in the light of pertinent statutes and regulations. The pertinent parts thereof are set forth in the Appendix to this opinion, except the amendment to Section 2 of the Act of March 3, 1903, which is set forth in the body of this opinion. Section 1 of the Act of March 2, 1893 (note 1 of the appendix), made it unlawful for any railroad engaged in interstate commerce to run a train in such traffic without a sufficient number of cars equipped with power or train brakes to enable the engineer to control its speed without requiring the brakeman to use the hand brakes for such purpose. In Section 2 of the Act of 1903 (note 2 of the appendix) it is provided that 50 per cent of the cars of a train shall have their brakes used and operated by the engineer and that said 50 per cent of such cars shall be associated together. This section also authorized the Interstate Commerce Commission, after hearing, to increase the minimum percentage in any one train required to be equipped with power or train brakes. On June 10, 1910, after hearing, the Interstate Commerce Commission issued its order which increased the minimum percentage of power braked cars to 85. (See note 3 of appendix) On April 11, 1958 Congress enacted Public Law 85–375, which amended Section 2 of the Act of March 2, 1903, by extending the Interstate Commerce Commission's authority over safety appliances. This amendment in pertinent part reads as follows:

"One hundred and twenty days after the date of enactment of the Power or Train Brakes Safety Appliance Act of 1958, the Interstate Commerce Commission shall adopt

and put into effect the rules, standards, and instructions of the Association of American Railroads, adopted in 1925, and revised in 1933, 1934, 1941, and 1953, with such revisions as may have been adopted prior to the enactment of such Act, for the installation, inspection, maintenance, and repair of all power or train brakes for common carriers engaged in interstate commerce by railroad. Such rules, standards, and instructions shall thereafter remain the rules, standards and instructions for the installation, inspection, maintenance, and repair of all power or train brakes unless changed, after hearing, by order of the Interstate Commerce Commission: *Provided, however,* That such rules or standards or instructions or changes therein shall be promulgated solely for the purpose of achieving safety. The provisions and requirements of this section shall apply to all trains, locomotives, tenders, cars, and similar vehicles used, hauled, or permitted to be used or hauled, by any railroad engaged in interstate commerce * * *. Failure to comply with any rule, regulation, or requirement promulgated by the Interstate Commerce Commission pursuant to the provisions of this section shall be subject to the like penalty as failure to comply with any requirement of this section." 45 U.S.C.A. § 9.

Appellee does not dispute the fact that the order of the Interstate Commerce Commission of June 6, 1910 [Note 3 of Appendix] was lawfully promulgated pursuant to proper statutory authority. This order provides only that not less than 85 per cent of the cars of the train shall have their brakes used and operated by the engineer and that said 85 per cent shall be associated together. The order deals with no other subject. The amendment to Section 2 of the Act of March 2, 1903 of April 11, 1958 deals only with the adoption of rules, standards and instructions "for the installation, inspection, maintenance, and repair of all power or train brakes for common car-

riers engaged in interstate commerce by railroad." This amendment enabled the Interstate Commerce Commission, for the first time, to regulate the installation, inspection, maintenance, and repair of power brakes. This is clear from the legislative history, which is stated as follows:

"The bill amends the Safety Appliance Acts to give the Interstate Commerce Commission authority to establish rules, standards, and instructions for the installation, inspection, maintenance, and repair of power or train brakes.

"Under the Act of March 2, 1903, the Commission[er] is charged with the responsibility of enforcing the power or train brake provision of the Act, but does not have authority to prescribe rules, standards, and instructions for the installation, inspection, maintenance, and repair of such equipment." U.S.Code Congressional and Administrative News (1958), Vol. 2, p. 2343.

To answer the railroad's charge that the underlying purpose of the bill was to shorten the length of trains and thus to increase the number of personnel that would have to be hired, the proviso "that such rules or standards or instructions or changes therein shall be promulgated solely for the purpose of achieving safety," was added as an amendment to the bill. The explanation for this addition is:

"The purpose of including such language is to make it clear that these rules are for the purpose of safety, and not for the purpose of limiting the length of trains. The relationship of train length to safety is a matter for separate consideration." U.S.Code Congressional and Administrative News (1958), Vol. 2, p. 2345.

 We are satisfied that the proviso relied upon by the trial court was intended to apply only to the Interstate Commerce Commission's newly granted authority to prescribe rules, standards and instruction for the installation, inspec-

tion, maintenance, and repair of power or train brakes. In our view, the proviso does not and was not intended to modify or change in any way the Commission's already existing authority to enter orders with respect to the minimum percentage of cars in the train required to be operated with power brakes.

After holding that the proviso contained in the amendment of April 11, 1958 applied to the Commission's authority to enter orders with respect to the minimum percentage of cars in the train required to be operated with power brakes, the district court concluded that the Commission's order of June 6, 1910 was invalid, because contrary to the proviso of the 1958 amendment in that "there is more safety in placing a car with brakes that cannot be operated by the engineer in the middle of the train." In doing so, the district court also improperly substituted its judgment as to the safest way to move cars with inoperative power brakes for the method set forth in the authorized order of the Commission. Interstate Commerce Commission v. Illinois Central R. R. Co., 1910, 215 U.S. 452, 30 S.Ct. 155, 54 L.Ed. 280; United States v. Seaboard A. L. R. Co., 1959, 361 U.S. 78, 80 S.Ct. 12, 4 L.Ed.2d 25.

■ We hold that the district court erred in holding that the order of the Interstate Commerce Commission of June 6, 1910 is invalid, and in concluding that appellee need not comply with its provisions but need only comply with the provisions of Section 2 of the Act of March 2, 1903 [Note 2 of Appendix].

■ In paragraph II of the third cause of action appellant alleged that:

"Defendant used on January 22, 1959, its train No. 919, consisting of 112 cars drawn by Diesel locomotive engine No. 5657 on its line of railroad and over a part of a highway of interstate commerce from San Luis Obispo toward San Francisco, both in the State of California, in violation of the Safety Appliance Acts, 45 U.S.C. §§ 1 through 10, as modified by an order of the Interstate Commerce Commission of June 6, 1910,

for reason that S.P.M.W. 2392, the 63rd car did not have its power or train brakes used and operated by the engineer."

In its second answer to paragraph II of the complaint, appellee alleged:

"* * * that on January 22, 1959, inspectors employed by the Interstate Commerce Commission, without making their presence known, entered the yards of this answering defendant at San Luis Obispo, California, and made an inspection of the cars in said yard. That after car S.P.M.W. 2392 had left said yard, they advised the employees of this answering defendant of an alleged defect in the aforenumbered car and upon receiving such advice, the train of which said car was a part, was contacted at Watsonville Junction and repairs were made."

This special answer invoked the provisions of Section 4 of the Act of April 14, 1910, 36 Stat. 299, 45 U.S.C.A. § 13, the pertinent parts of which section appear in Note 4 of the Appendix. This section, in substance, provides for the imposition of a penalty of $250.00 against any common carrier hauling or permitting to be hauled on its line any car not equipped as provided in Title 45 U.S.C.A. §§ 11–16. The section contains a proviso as follows:

"*Provided*, that where any car shall have been properly equipped, as provided in sections 1–16 of this title, and such equipment shall have become defective or insecure while such car was being used by such carrier upon its line of railroad, such car may be hauled from the place where such equipment was first discovered to be defective or insecure to the nearest available point where such car can be repaired, without liability for the penalties imposed by this section or section 6 of this title, if such movement is necessary to make such repairs and such repairs cannot be made except at such repair point."

There is some evidence in the record that appellee did not know that car 2392 was defective until after the train of which it was a part left San Luis Obispo. We find slight, if any, evidence in the record as to whether or not such defect could have been remedied at San Luis Obispo. It appears to be undisputed that appellee caused the defect to be remedied at Watsonville. The district court made no findings of fact as to when said car became defective, where appellee discovered said car was defective, or where the defect could have been remedied. We believe that such matters should have been covered by the trial court's findings of fact.

In these circumstances, the judgment of the district court, based upon the third cause of action set out in plaintiff's complaint, is vacated and the cause is remanded to the district court for a new trial to be limited to the issues raised by appellee's second answer to paragraph II of the third cause of action of appellant's complaint.

APPENDIX

[1] "It shall be unlawful for any common carrier engaged in interstate commerce by railroad to use on its line any locomotive engine in moving interstate traffic not equipped with a power driving-wheel brake and appliances for operating the train-brake system, or to run any train in such traffic that has not a sufficient number of cars in it so equipped with power or train brakes that the engineer on the locomotive drawing such train can control its speed without requiring brakemen to use the common hand brake for that purpose." Act of March 2, 1893, c. 196, 27 Stat. 531, 45 U.S.C.A. § 1.

[2] "Whenever, as provided in sections 1–7 of this title, any train is operated with power or train brakes not less than 50 per centum of the cars in such train shall have their brakes used and operated by the engineer of the locomotive drawing such train; and all power-braked cars in such train which are associated together with said 50 per centum shall have their brakes so used and operated; and, to more fully carry into effect the objects of said sections, the Interstate Commerce Commission may from time to time, after full hearing, increase the minimum percentage of cars in any train required to be operated with power or train brakes which must have their brakes used and operated as aforesaid; and failure to comply with any such requirement of the said Interstate Commerce Commission shall be subject to the like penalty as failure to comply with any requirement of this section. Mar. 2, 1903, c. 976, § 2, 32 Stat. 943." 45 U.S.C.A. § 9.

[3] The Order of the Interstate Commerce Commission of June 6, 1910 (49 C.F.R. Sec. 132.1) provides:

"On and after September 1, 1910, on all railroads used in interstate commerce, whenever, as required by the Safety Appliance Act as amended March 3, 1903, any train is operated with power or train brakes, not less than 85 percent of the cars of such train shall have their brakes used and operated by the engineer of the locomotive drawing such train, and all power braked cars in every such train which are associated together with the 85 percent shall have their brakes so used and operated."

[4] "Any common carrier subject to sections 11–16 of this title using, hauling, or permitting to be used or hauled on its line, any car subject to the requirements of said sections not equipped as provided in said sections, shall be liable to a penalty of $250 for each and every such violation, to be recovered as provided in section 6 of this title: *Provided,* That where any car shall have been properly equipped, as provided in sections 1–16 of this title, and such equipment shall have become defective or insecure while such car was being used by such carrier upon its line of railroad, such car may be hauled from the place where such equipment was first discovered to be defective or insecure to the nearest available point where such car can be repaired, without liability for the penalties imposed by this section or section 6 of this title, if such

movement is necessary to make such repairs and such repairs cannot be made except at such repair point; * * *."
As amended August 14, 1957, Pub.L. 85–135, § 1(2), 71 Stat. 352.